**MIDDLEBROOKS SHAPIRO, P.C.**
841 Mountain Avenue, First Floor
Springfield, New Jersey  07081
(973) 218-6877
(973) 218-6878 (fax)
Joseph M. Shapiro, Esq. (JS-1981)
*jshapiro@middlebrooksshapiro.com*
Attorneys for Defendant, Jon Simkowitz

| | |
|---|---|
| **NEXT CLEANERS, LLC,**<br><br>Planitiff<br><br>v.<br><br>**JONATHAN MIODUSZEWSKI, et al.,**<br><br>Defendants. | UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF NEW JERSEY<br><br>Case No.: 17-00222-MCA-MAH<br><br>**CERTIFICATION IN SUPPORT OF MOTION TO DISMISS COMPLAINT AS TO DEFENDANT JON SIMKOWITZ PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>**Hearing Date:**   March 20, 2017 at 9:00 a.m.<br>**Oral Argument:**   Waived, Unless Timely<br>                              Objection Filed |

**JON SIMKOWITZ,** of legal age, hereby certifies as follows:

1.       I am a defendant named in the above-captioned action.

2.       Given the foregoing, I am fully familiar with the facts set forth herein.

3.       I make this Certification in Support of my Motion to Dismiss (the "Motion") the Complaint & Jury Trial Demand (the "Complaint") filed on behalf of plaintiff Next Cleaners, LLC (the "Plaintiff").

4.       On or about July 21, 2010, defendant Jonathan J. Mioduszewski ("Mioduszewski") executed a Certificate of Limited Partnership for "NextCleaners.com of Westfield" ("NCW") which designated Mioduszewski as the sole "General Partner" of NCW, and which designated Nexus Resources as the sole "Limited Partner" of NCW, as

demonstrated by the true and correct copy of the Certificate of Limited Partnership of NCW annexed hereto as **Exhibit A**.[1]

## CERTIFICATE OF LIMITED PARTNERSHIP

OF

A Kingdom of Israel Limited Partnership

The parties hereto do hereby certify that an Agreement was made effective the July 21, 2010, at Westfield Township, New Jersey, by the following General Partners and by the Limited Partners as listed in point 5 below.

[...]

1. <u>Name</u>. The name of this Limited Partnership is, "NextCleaners.com of Westfield".

[...]

5. <u>The Partners</u>. The General Partners and Limited Partners of this Limited Partnership are as follows:

| GENERAL PARTNER | PLACE OF ABODE or MAILING LOCATION |
| --- | --- |
| JONATHAN JAMES MIODUSZEWSKI | 335 South Avenue West, Westfield Township, New Jersey |

| LIMITED PARTNERS | PLACE OF ABODE or MAILING LOCATION |
| --- | --- |
| Nexus Resources | c/o non-domestic, 701 Colonial Avenue; near: Union, New Jersey (07083) |

[...]

15. <u>Amount of Cash and Agreed Value and Description of Other Property Contributed</u>. The Partners in the Limited Partnership have contributed their interest as set forth (only the following start up contributions were made):

| JONATHAN JAMES MIODUSZEWSKI | time and expertise valued equivalent with the total cash contributions. |
| --- | --- |
| Nexus Resources | $12,000.00 |

GENERAL PARTNERS:

JONATHAN JAMES MIODUSZEWSKI, by our mark and seal

LIMITED PARTNERS:

NEXUS RESOURCES, by our mark and seal

    5.     On or about August 16, 2010, Mioduszewski executed a "Commercial Lease Agreement" (the "Westfield Lease") on behalf of NCW, in Mioduszewski's capacity as the sole General Partner of NCW, with landlord Destefanis Properties, LLC (the "Westfield Landlord") relating to commercial real estate located at 335 South Avenue West, Westfield, New Jersey 07090 (the "Westfield Store"), as demonstrated by the true and correct copy of the Westfield Lease annexed hereto as **Exhibit B**.

---

[1] All documents annexed to this Certification, and submitted in support of the instant Motion, were provided to me by Mioduszewski following my requests for the same from Mioduszewski.

## COMMERCIAL LEASE AGREEMENT

**This lease agreement** (hereinafter "Lease") is made and entered into this 16ᵗʰ day of August 2010, by and between:

the Landlord:  **DESTEFANIS PROPERTIES, LLC** (hereinafter "Landlord"),
a New Jersey limited liability company, located at: 217 Myrtle Avenue, Westfield, New Jersey 07090;

and,

the Tenant:  **NextCleaners.com of Westfield** (hereinafter "Tenant"),
a Limited Partnership, whose mailing location prior to establishing this lease is the mailing location of its General Partner: 701 Colonial Avenue, Union Township, New Jersey 07083; and whose business address will become: 335 South Ave West, Westfield, New Jersey 07090, in accord with the terms of this lease.

[…]

LANDLORD:

**DESTEFANIS PROPERTIES, LLC**
217 Myrtle Avenue
Westfield, New Jersey, 07090

TENANT:

NEXTCLEANERS.COM OF WESTFIELD
335 South Avenue West
Westfield Township, New Jersey, 07090

TENANT'S G.P.:

JONATHAN JAMES MIODUSZEWSKI, **G.P.**
701 Colonial Avenue
Union Township, New Jersey, 07083

[…]

**IN WITNESS WHEREOF**, this Lease was executed as of the day and year first above written.

LANDLORD:
**DESTEFANIS PROPERTIES, LLC**

_____
Robert J. DeStefani
Managing Member

TENANT:
NextCleaners.com of Westfield

_____
Jonathan James Mioduszewski, GP
General Partner

6.    The Westfield Lease designates "Jonathan James Mioduszewski, G.P." as the "Tenant's G.P." and as the "General Partner" of NCW. *See, Id.*

7.    On or about September 1, 2010, Mioduszewski executed a "Lease Guaranty Agreement", in his capacity of General Partner of NCW (the "Westfield Lease Guaranty"), in connection with the Westfield Lease, as demonstrated by the true and correct unexecuted copy of the Westfield Lease Guaranty annexed hereto as **Exhibit C**.

### LEASE GUARANTY AGREEMENT

**THIS LEASE GUARANTY AGREEMENT** (the "Guaranty"), is made and executed as of the 1st day of September 2010 by **Jonathan James Mioduszewski, G.P.** ("Guarantor"), having an address at:

335 South Avenue West
Westfield Township, New Jersey, 07090

[…]

3

**IN WITNESS WHEREOF,** Guarantor has hereunto executed this Guaranty as of the date first above written.

ATTEST:                          Jonathan James Mioduszewski, G.P.

[…]

I CERTIFY that on August 18*, 2010, **Jonathan James Mioduszewski, G.P.** personally came before me and this person acknowledged under oath, to my satisfaction, that:

[…]

8.      On or about February 20, 2012, Mioduszewski executed a "Certificate of Limited Partnership" for "Next Cleaners of Cranford Ltd." ("NCC"), and which designates Mioduszewski as the sole "General Partner" of NCC, and which also designates Blue Sky Investments as the sole "Limited Partner" of NCC, as demonstrated by the true and correct copy of the Certificate of Limited Partnership of NCC annexed hereto as **Exhibit D**.

### CERTIFICATE OF LIMITED PARTNERSHIP
OF
### Next Cleaners of Cranford Ltd.
A Kingdom of Israel Limited Partnership

The parties hereto do hereby certify that an Agreement was made effective the February 20, 2012, at Cranford Township, New Jersey, by the following General Partners and by the Limited Partners as listed in point 5 below.

[…]

1.  Name. The name of this Limited Partnership is, "Next Cleaners of Cranford Ltd.".

[…]

5.  The Partners. The General Partners and Limited Partners of this Limited Partnership are as follows:

| GENERAL PARTNER | PLACE OF ABODE |
| --- | --- |
| JONATHAN J. MIODUSZEWSKI | c/o non-domestic, 11 Walnut Street, Cranford Township, New Jersey (07016) |

| LIMITED PARTNERS | PLACE OF ABODE or MAILING LOCATION |
| --- | --- |
| Blue Sky Investments | c/o non-domestic, 701 Colonial Avenue, Union Township, New Jersey (07083) |

[…]

15. Amount of Cash and Agreed Value and Description of Other Property Contributed. The Partners in the Limited Partnership have contributed their interest as set forth (only the following start up contributions were made):
JONATHAN J. MIODUSZEWSKI ..............time and expertise valued equivalent with the total cash contributions.
Blue Sky Investments....................................$20,000

GENERAL PARTNERS:

JONATHAN J. MIODUSZEWSKI, by our mark and seal

LIMITED PARTNERS:

Blue Sky Investments, by our mark and seal

9.      In or about February, 2012, NCC entered into a "Lease Agreement" (the "Cranford Lease"), with landlord Sunkin Properties, LLC (the "Cranford Landlord") relating to commercial real estate located at 11 Walnut Street, Cranford, New Jersey 07016 (the "Cranford Store"), as demonstrated by the true and correct unexecuted copy of the Cranford Lease annexed hereto as **Exhibit E**.

### *Lease Agreement*

Business and Commercial

This Lease Agreement is made on February 2012

**BETWEEN SUNKIN PROPERTIES LLC**

with offices at: 4 Dover Road, Pittsford, N.Ywith offices at: 4 Dover Road, Pittsford, N.Y.14534

referred to as the "Landlord,"

**NEXT CLEANERS OF CRANFORD LTD.**

whose address will become: 11 Walnut Street, Cranford Township Ns will become: 11 Walnut Street, Cranford Township New Jersey (07016)

referred to as the "Tenant."

[…]

10.      On or about March 2, 2012, Mioduszewski, on behalf of NCC, in Mioduszewski's capacity as the sole "General Partner" of NCC, entered into "An amendment to the Lease Agreement" with the Cranford Landlord (the "Cranford Lease Amendment") as demonstrated by the true and correct executed copy of the Cranford Lease Amendment annexed hereto as **Exhibit F**.

*An amendment to the Lease Agreement*

Business and Commercial

**BETWEEN SUNKIN PROPERTIES LLC**

with offices at: 4 Dover Road, Pittsford, N.Y.14534

referred to as the "Landlord,"

**NEXT CLEANERS OF CRANFORD LTD.**

whose address is: 11 Walnut Street, Cranford, N.J. 07016

referred to as the "Tenant."

Dated: March 2nd 2012

[...]

**LANDLORD:**                                    **TENANT:**
**SUNKIN PROPERTIES, LLC.**              NextCleaners Of Cranford LTD.

_____          _____
Tom Sunkin                                        JONATHAN JAMES MIODUSZEWSKI
Managing Member                               General Partner

11.     I have never held any ownership interest in NCC, NCW, the Westfield Store, the Cranford Store, "Yellow Bear Cleaners (Westfield)", or "Yellow Bear Cleaners (Cranford)".

12.     I have never been a principal of NCC, NCW, the Westfield Store, the Cranford Store, "Yellow Bear Cleaners (Westfield)", or "Yellow Bear Cleaners (Cranford)".

13.     I have never executed any lease agreement, trademark agreement, or any other agreement on behalf of NCC, NCW, the Westfield Store, the Cranford Store, "Yellow Bear Cleaners (Westfield)", or "Yellow Bear Cleaners (Cranford)".

14.     I have never opened or controlled any bank account on behalf of NCC, NCW, the Westfield Store, the Cranford Store, "Yellow Bear Cleaners (Westfield)", or "Yellow Bear Cleaners (Cranford)", as demonstrated by the true and correct copy of a

confirmation letter from Valley National Bank dated February 24, 2017 and annexed hereto as **Exhibit G**.

**Valley National Bank**

[...]

February 24, 2017

To Whom It May Concern:

Jonathan Mioduszewski is the sole signer on the checking account at Valley National Bank. He has been the sole signer on the account since the account opening of August 2010 till present for Next Cleaners Com of Westfield.

[...]

Thank you.

Caitlin Larsen
Branch Service Manager
Cranford Branch

15.     I have also never registered or operated any web domain name in my name, or in a corporate capacity, and more specifically, I have never registered or operated a domain name called "nextcleanersnj.com" as demonstrated by the true and correct copy of the domain name ownership report for "nextcleanersnj.com" annexed hereto as **Exhibit H** that clearly indicates Mioduszewski as registrant of that domain:

Domain Name: NEXTCLEANERSNJ.COM
Registry Domain ID: 1855644738_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.godaddy.com
Update Date: 2016-04-22T10:27:48Z
Creation Date: 2014-04-21T23:53:57Z
Registrar Registration Expiration Date: 2017-04-21T23:53:57Z

[...]

Registrant Name: Jon Mioduszewski
Registrant Organization:
Registrant Street: 701 colonial ave
Registrant City: union
Registrant State/Province: New Jersey
Registrant Postal Code: 07083
Registrant Country: US
Registrant Phone: +1.9086887788
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: jonm701@hotmail.com

I hereby certify under penalty of perjury that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Jon Simkowitz

Dated: February 24, 2017

8

**EXHIBIT A**

## CERTIFICATE OF LIMITED PARTNERSHIP

OF

A Kingdom of Israel Limited Partnership

The parties hereto do hereby certify that an Agreement was made effective the July 21, 2010, at Westfield Township, New Jersey, by the following General Partners and by the Limited Partners as listed in point 5 below.

**WITNESSETH:**

The parties hereto, on the date described above, formed a Limited Partnership in the Kingdom of Israel.

1. <u>Name</u>.  The name of this Limited Partnership is, "NextCleaners.com of Westfield".

2. <u>Business</u>.  The general character of the Partnership's business shall include but not be limited to:  providing services, investing and trading in Commodities, Stocks, Bonds, Mutual Funds, Futures, Options, Real Estate, financing, purchasing, holding, developing, renting, and leasing property, equipment, and/or opportunities, and conducting general business as thereto related.

3. <u>Principal Place of Business</u>.  The location of the principal place of business of the Partnership is:
335 South Avenue West, Westfield Township, New Jersey.

4. <u>Registered Agent</u>.  The registered agent for service for this Limited Partnership is: the General Partner, whose mailing location is exactly as follows:  335 South Avenue West, Westfield Township, New Jersey.

5. <u>The Partners</u>.  The General Partners and Limited Partners of this Limited Partnership are as follows:

| GENERAL PARTNER | PLACE OF ABODE or MAILING LOCATION |
|---|---|
| JONATHAN JAMES MIODUSZEWSKI | 335 South Avenue West, Westfield Township, New Jersey |

| LIMITED PARTNERS | PLACE OF ABODE or MAILING LOCATION |
|---|---|
| Nexus Resources | c/o non-domestic, 701 Colonial Avenue; near: Union, New Jersey  (07083) |

6. <u>Term</u>.  The Partnership shall begin on or before the July 21, 2010, and shall continue until, August 7, 2030, unless sooner dissolved by law or by agreement of the parties hereto or unless extended by a majority agreement of the Partners.

7. <u>Additional Contributions</u>.  No additional contributions from the Limited Partners have been agreed upon as of this date.

8. <u>Return of Contributions</u>.  No Limited Partner shall be entitled to withdraw or demand the return of any part of contributions except on dissolution of the Partnership at which time the General Partners agree to return in full any part of the limited partners initial capital contribution which have not been invested or which have not already been returned to that limited partner by any means.

9. <u>Profits</u>.  All annual net profits of the Partnership shall be divided among the General and Limited Partners in the same proportions as the Partners' then "Partnership Interest" dictates, unless retained for the Partnership investment and business activities, as explained in detail by the Partnership Agreement.

10. <u>Assignments</u>.  A Limited Partner shall have the right to sell his interest in the Partnership acting through the guardian, but only after such Limited Partner gives to the Partnership a 120-day opportunity to purchase such interest, as explained in detail by the Partnership Agreement.

11. <u>Additional Limited Partners</u>.  The General Partner may admit additional limited partners according to the agreement.

12. <u>Priority Among Limited Partners</u>.  There is no priority of one Limited Partner over another as to the contributions or compensation by way of income.

13. <u>Continuance of Business</u>.  Upon the death, retirement or insanity of the surviving General Partner, the Partnership shall dissolve unless continued by the remaining Partners by selecting a new General Partner.  If the last surviving or serving General Partner has died, retired and/or becomes insane, then the Limited Partners holding interest in capital in excess of eighty nine percent (89%) of the capital owned by all Limited Partners may elect to continue the Partnership by selecting a new General Partner.

14. <u>Property Other Than Cash</u>.  A Limited Partner cannot demand property other than a valid check in return for his contributions.

15. <u>Amount of Cash and Agreed Value and Description of Other Property Contributed</u>.  The Partners in the Limited Partnership have contributed their interest as set forth (only the following start up contributions were made):
JONATHAN JAMES MIODUSZEWSKI ....time and expertise valued equivalent with the total cash contributions.
Nexus Resources .........................................$12,000.00

GENERAL PARTNERS:

JONATHAN JAMES MIODUSZEWSKI, by our mark
and seal

LIMITED PARTNERS:

NEXUS RESOURCES, by our mark and seal

© The Way of Kings™, 2001, 2008

# EXHIBIT B

## COMMERCIAL LEASE AGREEMENT

**This lease agreement** (hereinafter "Lease") is made and entered into this 16th day of August 2010, by and between:

the Landlord:    **DESTEFANIS PROPERTIES, LLC** (hereinafter "Landlord"),
a New Jersey limited liability company, located at: 217 Myrtle Avenue, Westfield, New Jersey 07090;

and,

the Tenant:    **NextCleaners.com of Westfield** (hereinafter "Tenant"),
a Limited Partnership, whose mailing location prior to establishing this lease is the mailing location of its General Partner: 701 Colonial Avenue, Union Township, New Jersey 07083; and whose business address will become: 335 South Ave West, Westfield, New Jersey 07090, in accord with the terms of this lease.

## W I T N E S S E T H :

1. <u>LEASED PREMISES</u>:  In consideration of and subject to the rents, terms, provisions and covenants of this Lease, Landlord hereby leases, lets and demises to Tenant the following described premises (hereinafter "leased premises") containing 673.43 square feet of rentable space located at: 335 South Avenue West, Westfield, New Jersey 07090; which rentable space is more particularly described as the sound (useable for business) physical space defined as Unit #2 of the existing building ground floor plan & area calculations by Michael Giambalvo, Architect dated 9/20/99.

2. <u>TERM</u>:  Subject to and upon the conditions set forth herein, the "Term" of this Lease shall be thirty-six (36) months / three (3) years, commencing on, September 1st, 2010 (hereinafter "Commencement Date"), and expiring on August 31st, 2013 (hereinafter "Expiration Date").

3. <u>RENT</u>:

   (a) Tenant agrees to lease the leased premises by paying rent in increments of $1,277.84 per month for said Term until the total Rent of $46,002 is paid in full.  Rent is to be paid, commencing on September 1st, 2010. From the Commencement Date through the Expiration Date, each monthly payment shall be due and payable on or before the 1st day of each month. Not including the pro rata portion of real estate taxes and insurance as set forth in the subparagraph 3(h) and 13(a) herein below.

   | Rent Schedule (Months) | Per Month | Per Year/Per Term | Equivalent Base Rent/PSF |
   |---|---|---|---|
   | 1-36 | $1,277.84 | $15,334/$46,002 | $22.77 |

   (b) Said amounts shall be payable to Landlord at the address shown in paragraph 32 (c) hereof.

   (c) All rental and other sums due to Landlord under this Lease shall be paid to Landlord when due in good funds without offset or deduction.

   (d) Tenant shall pay a late charge equal to ten (10%) percent of all rent not paid within five (5) days of the date due.

   (e) Upon Landlord providing Tenant proof that any actual increase in the fire and extended coverage insurance premiums, paid by Landlord for the building in which Tenant occupies space, was caused by a change in Tenant's use and occupancy of the leased premises, or if Tenant vacates the leased premises and causes an increase in such premiums, then Tenant shall pay, on demand, as additional rental the amount of such increase to Landlord.

   (f) Tenant shall not permit any operation or activity to be conducted or storage or use of any volatile or any other materials in the leased premises that would cause suspension or cancellations of any fire and extended coverage insurance policy carried by Landlord, or increase the premiums therefore, without the prior written consent of Landlord.

   (g) Any insurance which may be carried by Landlord or Tenant against loss or damage to the building and other improvements situated on the leased premises shall be for the sole benefit of the party carrying such insurance and under its sole control.

   (h) The 2010 base year calculation for 321-339 South Avenue West (Units 1-7) is equal to $26,797.51. Tenant shall pay its proportionate share of real estate taxes based on the percentage of leased space maintained by the Tenant.  The leased premises represent 8.45% percent of the 321-339 South Avenue West property. Tenant's yearly proportional share currently is $2,264.38 payable in equal monthly payments of $188.70 due on or before the 1st of each calendar month with the base rent.

   (i) Landlord is hereby irrevocably vested with full power and authority to subordinate Tenant's interest hereunder to any mortgage, deed of trust or other lien hereafter placed on the leased premises, and Tenant

1

agrees upon demand to execute such further instruments subordinating this Lease as Landlord may request, provided such subordination shall be upon the express condition that this Lease shall be recognized by the mortgagee and that the rights of Tenant shall remain in full force and effect during the term of this Lease so long as Tenant shall continue to perform all of the covenants of this Lease.  Landlord shall not be responsible for the acts or omissions of any other tenant or third party that may interfere with Tenant's use and enjoyment of the lease premises.

4.  SIGNS:  Tenant shall not place or affix any signs or other objects upon or to the roof or exterior walls of the leased premises or paint or deface the exterior walls of the leased premises without the prior written consent of Landlord.  Any signs installed by Tenant shall conform to applicable laws in deed and other restrictions.  Tenant shall remove all signs at the terminations of this Lease and shall repair any damage and close any holes caused or revealed by such removal.

5.  USAGE AND INSURANCE:  Tenant warrants and represents to Landlord that the leased premises shall be used for the purpose of maintaining and operating a business for the services related to Tenant and its growth, services related to a drop off dry cleaning service. No dry cleaning services shall be performed on premises. Tenant shall occupy the leased premises, conduct its business and control its agents, employees, invitees and visitors in a lawful and reputable manner.  Tenant will not otherwise interfere, annoy or disturb any other tenant in its normal business operations and the Landlord in its management of the building. Tenant shall not commit, or suffer to be committed, any waste on the leased premises, nor shall Tenant permit the leased premises to be used in any way which would, in the opinion of Landlord, be extra hazardous on account of fire or otherwise which would in any way increase or render void the fire insurance on the leased premises or contents of the building.  The character of occupancy and use of the leased premises, as restricted by this and other paragraphs of this Lease, is a material additional considerations and inducement for the granting of this Lease.

6.  BUILDING SERVICES:  Tenant shall pay their own cost of all utility services including, but not limited to: all charges for gas, heating, air conditioning, janitorial services, water & sewage, electricity usage, garbage, telephone service and internet connections.  Tenant shall pay its equal share of lawn maintenance, snow removal and lights for the exterior building.

7.  REPAIRS AND MAINTENANCE:
   (a)  Unless otherwise expressly provided, Landlord shall not be required to make any improvements, replacements or repairs of any kind to the leased premises during the term of this Lease.  Subject to other provisions of the Lease imposing obligations in this respect on Tenant and further subject to the provisions of Paragraphs 12, 13 and 14 hereof, Landlord shall repair, replace and maintain the external and structural parts of the building and the common areas (walls, etc.).  Landlord's cost of maintaining the items set forth in the Subparagraph 7(a) are subject to the rental provisions in Paragraph 3.
   (b)  Tenant shall, at its own cost and expense repair or replace any damage or injury to all or any part of the leased premises or the building caused by Tenant or Tenant's agents, employees, invitees, contractors, licensees or visitors, including equipment within and serving the building, unless the damage comes under the terms and provisions of this Lease.  If Tenant fails to make the repairs or replacements promptly, Landlord may, at its option, make repairs or replacements and the cost of such repairs or replacements plus a fee of 15% to cover Landlord's overhead shall be charged to Tenant as additional rental and shall become payable by the Tenant with the payments of the rental next due hereunder.
   (c)  Tenant shall maintain the leased premises, and at the termination of this Lease, by lapse of time or otherwise, Tenant shall deliver the leased premises to Landlord in as good condition as existed at the Commencement Date of this Lease, ordinary wear and tear, fire or other casualty or condemnation excepted.  The cost and expense of any repairs necessary to restore the condition of the leased premises shall be borne by Tenant alone and if Landlord undertakes to restore the leased premises it shall have a right of reimbursement against Tenant for such cost plus a fee of 15% to cover Landlord's overhead.
   (d)  All requests for repairs or maintenance that are the responsibility of the Landlord pursuant to any provision of this Lease must be made in writing to Landlord at the address set forth in Paragraph 32 hereof.

8.  COMPLIANCE WITH LAWS, RULES AND REGULATIONS:  Tenant will comply with all rules of the building which may from time to time be adopted by Landlord.  Landlord shall have the right at all times to change the rules and regulations of the building or to amend them in any reasonable manner for the preservation of good order of the leased premises and/or the building.  Tenant shall be solely responsible for and shall comply with all Environmental Laws relating to the leased premises unless the need for compliance therewith is due to the conduct of Landlord in which case Landlord shall be solely responsible for compliance.

9.  SECURITY DEPOSIT:  Tenant shall deposit by check with Landlord the sum equal to (2) months of rent, one half upon signing of Lease and one half within six (6) months.  Failure to tender balance shall be a default under this Lease.  Which sum shall be returned to Tenant without interest after the expiration of the Term; provided, Tenant has fully and faithfully carried out all of the terms, covenants and conditions of this Lease.  In no event shall Tenant be entitled to credit against any rent due hereunder by virtue of the deposit of such security.  In the

2

event of a sale of the building, Landlord shall have the right to transfer the security to the vendee providing that the same Landlord Tenant conditions provided herein will apply to the new landlord in the benefit of Tenant; accordingly, the current Landlord shall be considered released by Tenant from all liability for the return of such security.  Tenant shall look to the new landlord solely for the return of the security, and it is agreed that this shall apply to every transfer or assignment made of the security to a new landlord.  The security deposited under this Lease shall not be mortgaged, assigned or encumbered by Tenant without the prior written consent of Landlord. Tenant shall from time-to-time deposit additional amounts hereunder so that the total amount deposited hereunder shall at all times be equal to two times the monthly base rent.  The security deposit shall be held by the Landlord and not accrue interest.

10. ALTERATIONS AND IMPROVEMENTS:

(a) Tenant shall not make any alterations to the leased premises without the prior written consent of Landlord in each instance.  Tenant shall give Landlord prior written notice of its request to make any alterations.  Within twenty (20) days from receipt of such written notice, Landlord shall have the right to request from and to be provided by Tenant any additional information with respect to such alterations and to make such requirements with respect thereto as shall be reasonable under the circumstances, including, but not limited to information in the form of: drawings, estimates, plans and specifications of the proposed alterations. Should any structural changes be necessitated by the plans and specifications, Tenant shall pay to Landlord sums paid by Landlord, if any, to outside consultants or specialists for reviewing Tenant's estimates, drawings, plans and specifications.

(b) Any alterations made by Tenant in accordance with Subparagraph 10(a) above shall be constructed and completed in a good and workmanlike manner by contractors with plans and specifications approved in writing by Landlord.  Only those contractors designated by Landlord may perform services within the leased premises upon equipment, components or systems therein owned by Landlord and covered by existing warranties.  Tenant shall obtain all necessary governmental permits, licenses and approvals and shall comply with all applicable laws, governmental and insurance requirements, building codes and other applicable rules and regulations in connection with any such alterations. Despite 7(a) Tenant is not responsible for any costs related to the structural parts of the building.

(c) Tenant shall keep the leased premises free from any liens arising from any work performed, materials furnished or obligations incurred by or at the request of Tenant.  All persons contracting with Tenant or furnishing or rendering labor or materials to Tenant shall be notified in writing by Tenant that they must look only to Tenant for payment for such labor or materials.  Nothing contained in the Lease shall be construed as Landlord's consent to any contractor, subcontractor, laborer or materialman for the performance of any labor or the furnishing of any materials for any specific improvement, alteration or repair of or to the leased premises or the building, nor as giving Tenant any right to contract for or to permit the performance of any services or the furnishing of any materials that would result in any lien against the leased premises or the building.  If any lien is filed against the leased premises, building or Tenant's leasehold interest in the leased premises or the result of work performed, materials furnished or obligations incurred by or at the request of Tenant, its agents, contractors, employees or invitees, Tenant shall discharge same within ten (10) days after its filing.  If Tenant fails timely to discharge any such lien, then, in addition to any other right or remedy of Landlord, and at its election, Landlord may discharge the lien by either paying the amount claimed to be due or by obtaining the discharge in any other manner deemed reasonable by Landlord.  Tenant shall pay, on demand, any costs incurred by Landlord for the discharge or satisfaction of any such lien, and all reasonable attorneys' fees and other expenses of Landlord incurred in defending any such action or in obtaining the discharge of such lien.

(d) Except as otherwise specifically provided in the Lease, all alterations, leasehold improvements, and other physical additions made or installed by or for Tenant in or to the leased premises, shall, at Landlord's option become the Landlord's property at the Expiration Date or upon earlier termination hereof.  Tenant agrees to remove, at Tenant's expense, all of its furniture, furnishings, personal property, movable trade fixtures and such alterations, additions, and other physical improvements as required by Landlord by the Expiration Date, or upon earlier termination hereof, and shall promptly reimburse Landlord for the cost of repairing all damage done to the leased premises or the building by such removal.

(e) Any and all equipment installed on the leased premises by Tenant shall be pursuant to the issuance of all required governmental approvals.  The approval of Landlord for the installation of any such equipment, other property of the Tenant, Tenant installations or improvements to the leased premises necessitated by the installation of such equipment shall not be deemed a warranty by Landlord regarding the equipment or its use in any manner whatsoever.  Landlord undertakes no responsibility for the installation or the use of such equipment.  Such installation and use is the sole responsibility of the Tenant.  Tenant shall indemnify and hold Landlord harmless with regard to such use as set forth herein.

(f) In the event that Tenant makes any improvements or renovations to the leased premises, Tenant is responsible for all costs and expenses incurred as a result of returning the leased premises to its original condition as of the Commencement Date, unless otherwise agreed to by the Landlord.

3

11. <u>CONDEMNATION</u>:

    (a)   If during the term or extensions of this Lease all or a substantial part of the leased premises are taken for any public or quasi-public use, other than for temporary use, under any governmental law, ordinance or regulation, or by right of eminent domain or by purchase in lieu thereof, and the taking would prevent or materially interfere with the use of the leased premises for the purpose for which they are then being used, this Lease shall terminate and the rent shall be abated during the unexpired portion of this Lease effective on the date physical possession is taken by the condemning authority.  Landlord is entitled to receive the entire condemnation award and Tenant shall have not claim to such condemnation award.

    (b)   In the event a portion of the leased premises shall be taken for any public or quasi-public use under any governmental law, ordinance or regulation, or by right of eminent domain or by purchase in lieu thereof, and this Lease is not terminated as provided in <u>Subparagraph 11(a)</u> above, Landlord may, at Landlord's sole risk and expense, restore and reconstruct the building and other improvements on the leased premises owned by Landlord to the extent necessary to make it reasonable tenantable.  The rent payable under this Lease during the unexpired portion of the term shall be adjusted to such an extent as may be fair and reasonable under the circumstances; provided that the Tenant has not either terminated it business or moved to another location as a result of such a taking of the leased premises, under which condition the provisions for abatement as per Subparagraph 11(a) will apply.  Landlord is entitled to receive the entire condemnation award and Tenant shall have no claim to such condemnation award.

12. <u>FIRE AND CASUALTY</u>:  If the leased premises or any part thereof is damaged by fire or other casualty, Tenant shall give prompt written notice thereof to Landlord.  If the building is damaged by fire or other casualty so that substantial alteration or reconstruction of the building, in Landlord's sole opinion, is required or if the Mortgagee requires that the insurance proceeds payable as a result of said fire or other casualty be used to retire the mortgaged debt, at its option, Landlord may terminate this Lease by notifying Tenant in writing of such termination sixty (60) days after the date of such damage, in which event the rent hereunder shall be abated as of the date of such damage.  If Landlord does not elect to terminate this Lease Landlord shall commence seventy five (75) days after the date of such damage to repair the building and shall proceed with reasonable diligence to restore the building to substantially the same condition that existed immediately prior to the casualty.  Landlord shall not be required to rebuild, repair or replace any part of Tenant's furniture, fixtures, equipment, decorations removable by Tenant under the provisions of this Lease, or any other alterations, or additions whatsoever within the leased premises installed by or in behalf of Tenant.  Landlord shall not be liable, and Tenant herby releases Landlord from Liability, for any inconvenience, annoyance to Tenant or injury to the business of Tenant resulting from such damage or the repair thereof.  Landlord shall abate all rent of the Tenant during the time Landlord determines that the leased premises are unfit for occupancy, except if any portion of the building is damaged because of the fault or negligence of Tenant or Tenant's agents, employees or invitees, the rent shall not be diminished during the repair of such damage, and Tenant shall be liable to Landlord for the cost of the repair and restoration of the building to the extent such cost is not covered by insurance proceeds.  Any insurance that may be carried by Landlord or Tenant against loss or damage to the building or leased premises or property of either shall be for the sole benefit of the party carrying such insurance and under its sole control.

13. <u>PROPERTY INSURANCE</u>:

    (a)   Landlord, at all times during the term of this Lease, shall insure the building (excluding any property that Tenant is obligated to insure under <u>Subparagraph 13(b)</u> hereof) against damage with "All-Risk" insurance and public liability insurance.  Landlord may, but shall not be obligated to, obtain and carry other forms of insurance as it or the Mortgagee may reasonably determine advisable. The Tenants proportional share of the Landlords insurance premiums, as provided herein, shall be 8.5% percent. The current annual premium is $4783.00. Tenant's proportional share is $404.16 to be paid monthly at $33.68, due on or before the 1st day of each calendar month along with the base rent and taxes. Tenant acknowledges that it has no right to receive any proceeds from any insurance policies carried by the Landlord; Landlord shall have the right to self-insure against any of the above-described risks.

    (b)   At its sole expense, Tenant shall obtain and keep in force during the term of this Lease the following insurance, all policies being issued by insurers and in forms acceptable to Landlord:

        (i)      All-Risk insurance, including extended coverage, vandalism and malicious mischief, upon all property owned by Tenant and located in the leased premises or the building or for which Tenant is legally liable including, but not limited to, leasehold improvements, physical additions and alterations installed by or on behalf of Tenant in an amount not less that 90% of the full replacement cost thereof.  If there is a dispute as to the amount that comprises full replacement cost the decision of Landlord or Mortgagee shall be conclusive.

        (ii)     Comprehensive general liability insurance coverage to include personal injury, bodily injury, broad form property damage and blanket contractual liability for injuries to any person(s), for limits not less that $1,000,000.00 for injuries to one person and $2,000,000.00 for injuries to more that one

4

person, in any one accident or occurrence, and for loss or damage to the property of any person or persons for not less than $150,000.00 or such lesser amount as Landlord shall approve.

Any other insurance as Landlord or the Mortgagee reasonably may require from time to time, in amounts, and for insurable risks against which a prudent tenant of a comparable size in a comparable business would protect itself.

Tenant agrees that, upon request by Landlord, certificates of insurance, or certified copies of such insurance policies, will be delivered to Landlord not later than ten (10) days after Tenant receives such request.  All policies shall contain an endorsement requiring fifteen (15) days written notice from any insurer to Landlord and the Mortgagee before any material change in or cancellation or termination of any policy or certificate of insurance, and before any reduction in coverage.

Tenant shall neither permit nor place in the leased premises any article, material or item that may be prohibited by any insurance policy covering the building.  If Tenant's use of the leased premises, whether or not Landlord has consented to the use, results in any increase in premiums for the insurance carried by Landlord with respect to the building, Tenant shall pay such increase in premiums as an adjustment to rent within ten (30) days after being billed thereof.  In determining whether increased premiums are a result of Tenant's use of the leased premises, a schedule issued by the organization computing the insurance rate on the building or the leasehold improvements showing the various components of such rate shall be conclusive evidence of the items and charges comprising such rate.  Tenant shall promptly comply with all reasonable requirements of any insurer relating to the leased premises.

14. <u>OPTION TO RENEW</u>:  Tenant shall have the option to renew this lease for an additional three (3) five (5) year terms commencing on September 1st, 2013 and ending on August 31st, 2028 .The first 5 year option commencing on September 1st, 2013 and ending on August 31, 2018, the second 5 year option, commencing on September 1st, 2018 and ending on August 31st, 2023, and the third option commencing on September 1st, 2023 and ending on August 31st, 2028.  The rent schedule amounts shown below is base rent not including Taxes and Insurance. The Landlord and Tenant shall determine rental amounts for each term prior to the initial term dependent on the rise in taxes and insurance.  Each monthly payment shall be due and payable on or before the 1st day of each month. Not including the pro rata portion of real estate taxes and insurance as set forth in the subparagraph 3(h) and 13(a). The Tenant shall give Landlord written notice of the exercise of the options granted at least six (6) months prior to the Expiration Date on each option.  Should Tenant not give the required written notice of its intent to exercise its option to extend this Lease, said option shall expire and terminate.  Should Tenant not timely exercise this option, Landlord and its representatives are authorized to show the leased premises to prospective tenants.

| Rent Schedule (Months) | Per Month | Per Year | Equivalent Base Rent/PSF |
|---|---|---|---|
| 36-72 | $1,437.78 | $17,253.28 | $25.62 |
| 72-108 | $1,571.90 | $18,682.78 | $28.01 |
| 108-144 | $1,718.37 | $20,620.43 | $30.62 |
| 144-180 | $1,878.30 | $22,539.70 | $33.47 |
| 180-216 | $2,053.40 | $24,640.80 | $36.59 |

15. <u>PARKING</u>:  Tenant shall have the right and privilege to the non-exclusive, first come-first served use of the parking area located in the rear of the building at 321-339 South Avenue West, Westfield, New Jersey 07090.  It is understood that the parking area is shared amongst all tenants without any particular reservation. Landlord shall make available a loading/unloading 5-minute parking spot in the rear parking lot of the building.

16. <u>HOLD HARMLESS</u>:  Landlord shall not be liable to Tenant's employees, agents, invitees, licensees or visitors or to any other person, for any injury to person or damage to property on or about the leased premises caused by the negligence or misconduct of Tenant, its agents, servants or employees, or of any other person entering upon the leased premises under express or implied invitation by Tenant or caused by the building and improvements located on the leased premises becoming out of repair, or caused by leakage of gas, oil, water or steam or by electricity emanating from the leased premises.  Tenant agrees to indemnify, defend and hold harmless Landlord of and from any loss, attorney's fees, expenses or claims arising out of any such damage or injury, unless such injury is due to Landlord's negligence.

17. <u>QUIET ENJOYMENT</u>:  Landlord warrants that it has full right to execute and to perform this Lease and to grant the estate demised and that Tenant, upon payment of the required rents and performing the terms, conditions, covenants and agreements contained in this Lease, shall peaceably and quietly have, hold and enjoy the leased premises during the full term of this Lease as well as any extension or renewal thereof.

18. <u>LANDLORD'S RIGHT OF ENTRY</u>:  Landlord and its authorized agents shall have the right, at all hours to enter the leased premises for the following reasons: inspection; cleaning or making repairs; making alterations or additions as Landlord may deem necessary or desirable, determining Tenant's use of the lease premises, determining if an act of default under this Lease has occurred; to show the leased premises to any prospective tenant, or for any other reasonable purposes.

19. <u>ASSIGNMENT OR SUBLEASE</u>:

   (a) This Lease may be assigned by Landlord at Landlord's sole option.  Tenant agrees to accept the successor or assignee of Landlord as "landlord" under the Lease for the balance then remaining of the term thereof, subject to all terms and conditions of the Lease.  Should Landlord's interest in the leased premises cease to exist for any reason during the term of this Lease, then notwithstanding the happening of such event (i) the Lease nevertheless shall remain unimpaired and in full force and effect, (ii) Tenant hereunder agrees to attorn to the then owner of the leased premises, and (iii) Landlord shall be and is hereby entirely freed and relieved of all liability under this Lease and the then owner of the leased premises shall be deemed to have assumed the position of Landlord as defined above and agreed to carry out any and all covenants and obligations of Landlord under this Lease.

   (b) Tenant shall not assign, sublease, mortgage, or encumber its interest in this Lease or sublet all or any part of the leased premises without the prior written consent of Landlord, which consent shall not be unreasonably withheld by Landlord.  Any assignment, encumbrance or sublease without Landlord's written consent is deemed void.  No consent to any assignment, encumbrance or sublease shall constitute a further waiver of this <u>Subparagraph 19(b)</u>.  Tenant shall, by written notice in the form specified in the following sentence, advise Landlord of Tenant's intention on a stated date (which shall not be less than sixty (60) days after the date of Tenant's notice) to sublet, assign, mortgage or encumber any part or all of the leased premises or its interest therein for any part of the term of this Lease; and, in such event, Tenant's notice shall state the name and address of the proposed subtenant, assignee, pledge, mortgagee or transferee, and a true and complete copy of the proposed sublease, assignment, pledge, mortgage or other conveyance and all related documentation, executed by both parties, shall be delivered to Landlord with said notice.  In such event of an approved sublease, Landlord shall not be required to pay the cost of erecting demising walls and public corridors and making other required modifications to physically separate the portion of the leased premises remaining subject to this Lease from the rest of the leased premises.  Landlord, following receipt of Tenant's notice that it intends to sublet or assign any such space, shall within said thirty (30) day period advise Tenant in writing whether Landlord consents to the proposed subletting or assignment.  In the event of any assignment or subletting, Tenant's responsibility and obligation shall terminate upon the start of a subsequent option period.  Upon the occurrence of an "<u>event of default</u>" (defined below), if all or any part of the leased premises are then assigned or sublet, Landlord, in addition to any other remedies provided by this Lease or provided by law, at its option may collect directly from the assignee or subtenant all rents becoming due to Tenant by reason of the assignment or sublease, and Landlord shall have a security interest in all properties on the leased premises to secure payment of such sums.  Any collection directly by Landlord from the assignee or subtenant shall not be construed to constitute a novation or a release of Tenant from the further performance of its obligations under this Lease.  Should Landlord not collect directly from the assignee or subtenant such rents, all rentals paid to Tenant shall be retained by Tenant as Trustee for Landlord and immediately paid directly over to Landlord as additional rent.

   (c) If this Lease is assigned to any person or entity pursuant to the provisions of the Bankruptcy Code, 11U.S.C Section 101, et. Seq. (the "Bankruptcy Code"), any and all rentals, monies or other considerations payable or otherwise to be delivered by the assignee in connection with such assignment shall be directly paid or delivered to Landlord, shall be and remain the exclusive property of Landlord and shall not constitute property of Tenant or of the estate of Tenant within the meaning of the Bankruptcy Code.  Any and all rentals, monies or other considerations constituting Landlord's property under the preceding sentence not directly paid or delivered to Landlord, shall be held by Tenant in trust for the benefit of Landlord and be promptly paid or delivered to Landlord upon Landlord's request.  Any person or entity to which this Lease is assigned pursuant to the Bankruptcy Code shall be deemed without further act or deed to have assumed all of the obligations arising under this Lease on and after the date of such assignment.  Any such assignee shall upon demand execute and deliver to Landlord an instrument confirming such assumption.  If this Lease is assumed by Tenant or the trustee of Tenant or assigned to any person or entity pursuant to the Bankruptcy Code, "adequate assurance of future performance" under this Lease, within the meaning of the Bankruptcy Code, includes, but is not limited to, adequate assurance of each of the following:

6

(i)    Tenant, the trustee of Tenant or assignee will assume and perform all obligations arising under the Lease on and after the date of the assumption of assignment:

(ii)   All rents, monies and other consideration due under the Lease will be paid in full when due:

(iii)  Tenant, the trustee of Tenant or assigned will cause any and all rentals, monies or other consideration payable in connection with the assumption or assignment to be paid directly to Landlord: and

(iv)   The Premises will be used in the manner set forth in Paragraph 5 hereof.

(v)    The personal guaranties of the Tenant will expire upon a sub leasee signing a new lease and personal guarantee with the Landlord, only at that time will the tenant's responsibilities, obligations and personal guaranties expire.

(d)  Tenant shall, when and as appropriate and necessary, at Tenant's own expense, comply with the Industrial Site Recovery Act, N.J.S.A  13:1K-6 et seq., the regulations promulgated there under and any successor legislation and regulations ("ISRA") regarding the leased premises.  Tenant shall, at Tenant's own expense, make all submissions to, provide all information to, and comply with all requirements of, the Industrial Site Evaluation or its successor ("Element") of the New Jersey Department of Environmental Protection or its successor ("NJDEP").

(e)  Should Tenant's operations on the leased premises be outside of those industrial operations covered by ISRA, Tenant shall, at Tenant's own expense, obtain a letter of non-applicability or de minimus quantity exemption from the Element prior to termination of the Lease term and shall promptly provide Tenant's submission and the Element's exemption letter to Landlord.

20. LANDLORD'S LIEN:  Landlord shall have, in addition to the statutory Landlord's lien, and Tenant hereby grants to Landlord, a security interest in all of the fixtures and other personal property of Tenant now or hereafter placed in, upon or about the leased premises, and all proceeds thereof, as security for all of Tenant's obligations under this Lease.  Settling shall be subordinate to a security interest required by Tenant's lender. Tenant shall not remove any of its movable trade fixtures, furniture, furnishings or personal property from the leased premise until, in Landlord's determination, all of Tenant's obligations under this Lease have been fully satisfied. Without excluding any other manner of giving to Tenant any required notice, any requirement of a reasonable notice to Tenant of Landlord's intention to dispose of any collateral pursuant to the enforcement of the security interest granted hereby shall be met if such notice is given in the manner prescribed in Paragraph 32 of this Lease at leas five (5) days before the time of any such disposition or transfer.  Any sale or transfer made in enforcing Landlord's security interest shall be considered conducted in a commercially reasonable manner if held in the leased premises or the building after the time, place and method of sale and general description of the types of property to be sold have been advertised in a daily newspaper published in Union county for five (5) consecutive days before the date of the sale.  Tenant hereby agrees that any such sale or transfer shall be considered to be made in the ordinary course of the business or financial affairs of Tenant and Landlord, and further, shall be considered to be made according to ordinary business terms between Tenant and Landlord.

21. UNIFORM COMMERCIAL CODE:  This Lease is intended as and constitutes a security agreement within the meaning of the Uniform Commercial Code, and Landlord, in addition to the rights prescribed in the Lease, shall have all of the rights, titles, liens and interested in and to Tenant's property now or hereafter located upon the leased premises which are granted a secured party, as that term is defines, under the Uniform Commercial Code to secure the payment to Landlord of the various amounts provided in this Lease.  Tenant will on request execute and deliver to Landlord a financing statement for the purpose of perfecting Landlord's security interest under this Lease or Landlord may file this Lease or a copy thereof as a financing statement.  Should Tenant fail to execute a financing statement when requested by Landlord, Landlord is hereby appointed Tenant's attorney-in-fact and is authorized by Tenant to execute on Tenant's behalf any such financing and related documents. Landlord shall agree to subordinate its security interest, upon request, to Tenant's financier.  Any cost of preparing the requisite legal documentation to subordinate shall be borne by the Tenant.

22. DEFAULT BY TENANT:  The following shall be deemed to be an "event of default" by Tenant under this Lease:

(a)  Tenant shall fail to pay when due any installment of rent or any other payment required pursuant to this Lease, and such failure shall continue for a period of thirty (30) days after the date the rent was due;

(b)  Tenant shall fail to move into the leased premises within thirty (30) days after the Commencement Date, or shall abandon a substantial portion of the leased premises or shall fail to conduct its normal business operations therein;

(c)  Tenant shall fail to comply with any term, provision or covenant of this Lease, other than the payment of rent or otherwise expressly provided in this Paragraph 22, and such failure is not cured within thirty (30) days after written notice to Tenant;

(d)  Tenant shall file a petition or be adjudged bankrupt or insolvent under the Bankruptcy Code, as amended, or any similar law or stature of the United States or any state; or a receiver or trustee shall be appointed for all

or substantially all of the assets of Tenant' or Tenant shall make an assignment for the benefit of creditors; or

(e) Tenant shall do or permit to be done any act which results in a lien being filed against the leased premises or the building of which the leased premises are a part.

23. <u>REMEDIES FOR TENANT'S DEFAULT</u>:  Immediately upon an occurrence of any event of default set forth in the Lease, Landlord shall have the right at its election, then or at any time thereafter, to pursue any one or more of the following remedies with notice:

(a) Declare all installments of rent for the remainder of the Lease to be immediately due and payable whereupon that same shall become immediately due and payable.

(b) Re-enter and take possession of the leased premises and improvements without terminating this Lease, and sublease in their entirety the same for the account of Tenant, holding Tenant liable for the difference in the rent and other amounts actually paid by such sub-lessee in such subletting and the rents and other amounts payable by Tenant hereunder.

(c) Terminate this Lease, exclude Tenant from possession of the leased premises, and lease the same to another for the account of Tenant, holding Tenant liable for all rent and other accounts payable by Tenant hereunder.

(d) Take any action at law or in equity which may appear necessary or desirable to collect the rent and other amounts then due and thereafter to become due or to enforce performance and observance of any obligation, agreement or covenant of Tenant under this Lease, and in connection with such actions, to recover any and all damages to Landlord for Tenant's violation or breach of this lease.

24. <u>WAIVER OF DEFAULT OR REMEDY</u>:  Failure of Landlord to declare an event of default immediately upon its occurrence, or delay in taking any action in connection with an event of default, shall not constitute a waiver of the default, but Landlord shall have the right to declare the default at any time and take such action as is lawful or authorized under this Lease.  Pursuit of any one or more of the remedies set forth in <u>Paragraph 23</u> above shall not preclude pursuit of any one or more of the other remedies provided elsewhere in the Lease or provided by law, nor shall pursuit of any remedy provided constitute forfeiture or waiver of any rent or damages, accruing to Landlord by reason of the violation of any of the terms, provisions or covenants of this Lease. Failure by Landlord to enforce one or more of the remedies provided shall not be deemed or construed to constitute a waiver of the default or of any other violation or breach of any of the terms, provisions and covenants contained in this Lease.  Landlord's acceptance of rental following an event of default hereunder shall be construed as a waiver of such event of default.

25. <u>ACTS OF GOD</u>:  Landlord shall not be required to perform any covenant or obligation in this Lease, or be liable in damages to Tenant, so long as the performance or non-performance of the covenant or obligation is delayed, caused or prevented by an act of God, force majeure or any other cause not within the control of Landlord.

26. <u>COSTS & ATTORNEY'S FEES</u>:  In the event either Tenant or Landlord defaults in the performance of any of the terms, covenants, agreements or conditions contained in this Lease and either party places in the hands of an attorney the enforcement of all or any of the terms of this Lease, the non-prevailing party shall pay the prevailing party's costs and expenses, including, reasonable attorney's fees.

27. <u>HOLDING OVER</u>:  In the event of holding over by Tenant after the expiration or termination of the Lease, the hold-over shall be as a tenant at will and all of the terms and provisions of this Lease shall be applicable during that period, except that Tenant shall pay Landlord as rental for the period of such holdover an amount equal to one hundred and fifty (150%) percent of the rent was payable by Tenant during the last month of the original term of this Lease.  Tenant agrees to vacate and deliver the leased premises to Landlord upon Tenant's receipt of notice from Landlord to vacate. The rental payable during the hold over period shall be payable to Landlord on demand.  No holding over by Tenant, whether, with or without consent of Landlord, shall operate to extend this Lease.  Tenant shall be liable to Landlord for all damage that Landlord suffers because of any holding over by Tenant, and Tenant shall indemnify Landlord against all claims made by any one against the Landlord resulting from Tenant's delay.

28. <u>ESTOPPEL CERTIFICATES</u>:  Tenant agrees to furnish Landlord or the holder or beneficiary under any Mortgage (the "Mortgagee") promptly, from time to time, upon request of Landlord or Mortgagee, a statement certifying, if applicable, that Tenant is in possession of the leased premises; the leased premises are acceptable; the Lease is in full force and effect; the Lease is unmodified; Tenant claims no present charge, lien, or claim of offset against rent; the rent is paid for the current month, but is not prepaid for more than one month and will not be prepaid for more than one month in advance; there is no existing default by reason of some act or omission by Landlord; and such other matters as may be reasonably required by Landlord or Mortgagee.

29. <u>SUCCESSORS</u>:  The Lease shall be binding upon and inure to the benefit of Landlord and Tenant and their respective heirs, personal representatives, successors and assigns to the extent permitted under this Lease.

30. <u>TAX</u>:  Tenant shall pay and be liable for all rental, sales and use taxes or other similar taxes, if any levied or imposed by any city, state, county or other governmental body having authority.

8

held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision of this Lease, and such other provisions shall continue in full force and effect.

32. <u>NOTICE:</u>
    (a)  All rent required to be paid by Tenant shall be payable to Landlord at the address set forth below, or at any other address as Landlord may specify from time to time by written notice.
    (b)  All payments required to be made by Landlord to Tenant shall be payable to Tenant at the address set forth below, or at any other mailing location Tenant may specify from time to time by written notice.
    (c)  Any notice or document required or permitted to be delivered by this Lease shall be deemed to be delivered (whether or not actually received) when delivered by hand or deposited in the United States Mail: postage prepaid, certified mail, return receipt requested, addressed to the parties at the respective addresses set out below:

<u>LANDLORD:</u>

**DESTEFANIS PROPERTIES, LLC**
217 Myrtle Avenue
Westfield, New Jersey, 07090

<u>TENANT:</u>

**NEXTCLEANERS.COM OF WESTFIELD**
335 South Avenue West
Westfield Township, New Jersey, 07090

<u>TENANT'S G.P.:</u>

**JONATHAN JAMES MIODUSZEWSKI, G.P.**
701 Colonial Avenue
Union Township, New Jersey, 07083

33. <u>LANDLORD'S LIMITED LIABILITY:</u>  Landlord's liability remedies are restricted to its interest in the leased premises and the building. The partners of the Landlord have no personal liability to Tenant, other than to the extent of their interest in Landlord.  In all other respects this Lease is non-recourse to Landlord.

34. <u>ENTIRE AGREEMENT AND LIMITATION OF WARRANTIES:</u>  It is expressly agreed by tenant, as a material consideration for the execution of this lease, that this lease, with the specific references to written extrinsic documents, is the entire agreement of the parties; that there are, and were, no verbal representations, warranties, understandings, stipulations, agreements or promises pertaining to this lease or the expressly mentioned written extrinsic documents not incorporated in writing in this lease.  Landlord and tenant expressly agree that there are and shall be no implied warranties of merchantability, habitability, fitness for a particular purpose or any other or of any other kind arising out of this lease and there are no warranties which extend beyond those expressly set forth in the lease.  It is likewise agreed that this lease may not be altered, waived, amended or extended except by an instrument in writing signed by both Landlord and Tenant.

**IN WITNESS WHEREOF**, this Lease was executed as of the day and year first above written.

<u>LANDLORD:</u>
**DESTEFANIS PROPERTIES, LLC**

_____
Robert J. DeStefani
Managing Member

<u>TENANT:</u>
NextCleaners.com of Westfield, G.P.

_____
Jonathan James Mioduszewski, GP
General Partner

# <u>EXHIBIT C</u>

### LEASE GUARANTY AGREEMENT

**THIS LEASE GUARANTY AGREEMENT** (the "Guaranty"), is made and executed as of the 1st day of September 2010 by **Jonathan James Mioduszewski, G.P.** ("Guarantor"), having an address at:

335 South Avenue West
Westfield Township, New Jersey, 07090

### <u>W I T N E S S E T H:</u>

**WHEREAS,** contemporaneously herewith, DE STEFANIS PROPERTIES, LLC as landlord ("Landlord"), and NextCleaners.com of Westfield, a Limited Partnership, as tenant ("Tenant"), have entered into a certain lease (the "Lease") for premises located at 335 South Avenue West, Westfield, New Jersey; and

**WHEREAS,** initially capitalized terms used but not defined herein shall have the same meaning as terms defined in the Lease, directly or by cross-reference, unless the context requires otherwise; and

**WHEREAS,** to induce Landlord to execute the Lease, Guarantor is required to execute this Guaranty;

**NOW, THEREFORE,** for good and valuable consideration, the Guarantor agrees as follows:

1.     Guarantor absolutely and unconditionally guarantees to Landlord the full and punctual performance by Tenant of all the terms, covenants and obligations to be performed and observed by or on behalf of Tenant under the Lease, including, without limitation, the full, due and punctual payment of all Rent, any and all charges due by Tenant under the Lease (no matter how such charges are characterized), and damages (whether current damages or final damages as provided for in the Lease or as otherwise allowed by law).  Such guaranty is an absolute, unconditional guaranty of payment and not of collectibility, and is not conditioned or contingent upon any attempt to collect from Tenant or upon any other condition or contingency.  If for any reason Tenant shall fail duly and punctually to pay any such sum, Guarantor shall forthwith pay the same, together with interest thereon at the rate per annum which is the prime rate of interest published in the Wall Street Journal in effect on such date, but in no event at a rate higher than the maximum rate allowed by law, from the date on which the same became due to the date of payment, to Landlord.  Guarantor further unconditionally guarantees the due and punctual performance of and compliance with all other covenants, agreements, terms and conditions of the Lease required to be performed or complied with by Tenant.

1

2.       Guarantor will pay all costs and expenses (including, without limitation, attorneys' fees and expenses) incurred by or on behalf of Landlord in enforcing the obligations of Tenant under the Lease or in enforcing the obligations of Guarantor under this Guaranty.

3.       The obligations of Guarantor under this Guaranty shall be absolute and unconditional, shall not be subject to any counterclaim, set-off, deduction or defense based upon any claim Guarantor may have against Landlord and shall remain in full force and effect without regard to, and shall not be released, discharged or terminated or in any other way affected by, any circumstance or condition (whether or not Guarantor shall have any knowledge or notice thereof), including, without limitation:  (a) any amendment, modification, extension or renewal of the Lease (except that the liability of Guarantor hereunder shall be deemed to apply to the Lease as so amended, modified, extended or renewed); (b) any exercise or non-exercise by Landlord of any right, power or remedy under or in respect of the Lease, or any waiver, consent, indulgence or other action, inaction or omission under or in respect of the Lease; (c) any assignment, sale, sublease, surrender, forfeiture, re-entry, re-letting or other transfer in respect of the Lease of any or all of any interest in the Premises by Landlord or Tenant; (d) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding involving or affecting Tenant or Landlord or their properties or creditors, or any action taken with respect to the Lease, including, without limitation, any rejection or disaffirmance of the Lease by any trustee or receiver of Landlord or Tenant, or by any court, in any such proceeding; (e) any limitation on or cessation of the liability or unenforceability, in whole or in part, of any term or provision of the Lease; or (f) any transfer by Guarantor of any or all of the capital stock of Tenant.

4.       Guarantor unconditionally waives (a) notice of any of the matters referred to in Paragraph 3 hereof, (b) all notices which may be required by statute, rule of law or otherwise to preserve intact any rights against Guarantor, including, without limitation, any demand, proof or notice of non-payment of any Rent, charges or damages under the Lease, and notice of any failure on the part of Tenant to perform and comply with any covenant, agreement, term or condition of the Lease, (c) any right to the enforcement, assertion or exercise of any right, power or remedy conferred in the Lease or otherwise, (d) any requirement of diligence, and (e) any requirement to mitigate, by eviction of Tenant or otherwise, the damages resulting from a default of Tenant under the Lease.

5.       This Guaranty shall continue in full force and effect throughout the Lease Term and thereafter so long as any obligation or liability of Tenant provided for in the Lease during the Lease Term shall remain unperformed or unsatisfied (whether or not the Lease shall have terminated).

6.      If Guarantor consists of more than one person, the liability of said persons hereunder shall be joint and several.

7.      All notices and other communications (herein collectively called "Notices") which are required or desired to be given by any party under the Guaranty shall be in writing and shall be sent by (a) hand delivery, (b) United States registered or certified mail, return receipt requested, postage prepaid, or (c) reputable overnight courier which provides for acknowledgement of receipt.  Notices shall be deemed given when received or, if delivery is refused or not accepted, on the date of the first notice of attempt to deliver same by the Post Office.  Notices sent as aforesaid shall be sent (i) to Guarantor addressed to it at the address set forth above, or such other address as Guarantor shall have last designated by notice to Landlord in accordance with the provisions of this Paragraph 7, and (ii) to Landlord at 217 Myrtle Avenue, Westfield, New Jersey 07090, or such other address as Landlord shall have last designated by notice to Guarantor in accordance with the provisions of this Paragraph 7.

8.      Guarantor shall and hereby does waive trial by jury in any action, proceeding or counterclaim brought by either it or Landlord against the other on any matters arising out of or in any way connected with this Guaranty.

9.      This Guaranty shall inure to the benefit of and may be enforced by Landlord, its successors and assigns, and, in particular, shall inure to the benefit or and may be enforced by the then Landlord under the Lease; and this Guaranty shall be binding upon and be enforceable against Guarantor and its successors and assigns.

10.     Irrespective of the place of execution or performance, this Guaranty shall be governed by and construed in accordance with the laws of the State or New Jersey.  Guarantor agrees that (a) any suit, action or legal proceeding arising out of or relating to this Guaranty shall be brought in such jurisdiction (within or outside of the United States) selected by Landlord in its sole discretion, including, without limitation, the courts of the State of New Jersey (Federal or State), (b) it consents to the jurisdiction of such courts of the State of New Jersey in any suit, action or proceeding and (c) it waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any such court of the State of New Jersey.

11.     In any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, the remainder of the Guaranty and the application of that provision to their persons or circumstances shall not be affected but rather shall be enforced to the extent permitted by law.  This Guaranty shall be construed without regard to any presumption or other rule requiring construction against the party causing this Guaranty to be drafted.  All terms and words used this Guaranty, regardless of the number or gender in which they are used, shall be deemed to include any other number and other gender as the context may require.

12.     This Guaranty cannot be changed or terminated orally or in any matter other than by a written agreement executed by both Guarantor and Landlord, but will terminate after the first term of the Lease.

**IN WITNESS WHEREOF,** Guarantor has hereunto executed this Guaranty as of the date first above written.


ATTEST:                                          Jonathan James Mioduszewski, G.P.


_____              By:_____


**STATE OF NEW JERSEY      ;**
                                              **; SS;**

**COUNTY OF UNION              ;**


I CERTIFY that on August 18th, 2010, **Jonathan James Mioduszewski, G.P.** personally came before me and this person acknowledged under oath, to my satisfaction, that:

(a)     Jonathan James Mioduszewski is the General Partner of NextCleaners.com of Westfield, the limited partnership named in the attached document;

(b)     this person(s) is the attesting witness to the signing of this document by the proper Partner who is General Partner of the limited Partnership;

(c)     this person(s) signed this proof to attest to the truth of these facts


_____
NAME:
Attesting Witness

Signed and sworn to
Before me this 18th day
of August 2010

4

**EXHIBIT D**

## CERTIFICATE OF LIMITED PARTNERSHIP

OF

### Next Cleaners of Cranford Ltd.

A Kingdom of Israel Limited Partnership

The parties hereto do hereby certify that an Agreement was made effective the February 20, 2012, at Cranford Township, New Jersey, by the following General Partners and by the Limited Partners as listed in point 5 below.

#### WITNESSETH:

The parties hereto, on the date described above, formed a Limited Partnership in the Kingdom of Israel.

1. <u>Name</u>. The name of this Limited Partnership is, "Next Cleaners of Cranford Ltd.".

2. <u>Business</u>. The general character of the Partnership's business shall include but not be limited to: providing services, investing and trading in Commodities, Stocks, Bonds, Mutual Funds, Futures, Options, Real Estate, financing, purchasing, holding, developing, renting, and leasing property, equipment, and/or opportunities, and conducting general business as thereto related.

3. <u>Principal Place of Business</u>. The location of the principal place of business of the Partnership is located at:
   c/o non-domestic, 11 Walnut Street, Cranford Township, New Jersey (07016).

4. <u>Registered Agent</u>. The registered agent for service for this Limited Partnership is: JONATHAN J. MIODUSZEWSKI, whose mailing location is exactly as follows: c/o non-domestic, 11 Walnut Street, Cranford Township, New Jersey (07016).

5. <u>The Partners</u>. The General Partners and Limited Partners of this Limited Partnership are as follows:

   | GENERAL PARTNER | PLACE OF ABODE |
   |---|---|
   | JONATHAN J. MIODUSZEWSKI | c/o non-domestic, 11 Walnut Street, Cranford Township, New Jersey (07016) |

   | LIMITED PARTNERS | PLACE OF ABODE or MAILING LOCATION |
   |---|---|
   | Blue Sky Investments | c/o non-domestic, 701 Colonial Avenue, Union Township, New Jersey (07083) |

6. <u>Term</u>. The Partnership shall begin on or before the February 20, 2012, and shall continue until, February 20, 2032, unless sooner dissolved by law or by agreement of the parties hereto or unless extended by a majority agreement of the Partners.

7. <u>Additional Contributions</u>. No additional contributions from the Limited Partners have been agreed upon as of this date.

8. <u>Return of Contributions</u>. No Limited Partner shall be entitled to withdraw or demand the return of any part of contributions except on dissolution of the Partnership at which time the General Partners agree to return in full any part of the limited partners initial capital contribution which have not been invested or which have not already been returned to that limited partner by any means.

9. <u>Profits</u>. All annual net profits of the Partnership shall be divided among the General and Limited Partners in the same proportions as the Partners' then "Partnership Interest" dictates, unless retained for the Partnership investment and business activities, as explained in detail by the Partnership Agreement.

10. <u>Assignments</u>. A Limited Partner shall have the right to sell his interest in the Partnership acting through the guardian, but only after such Limited Partner gives to the Partnership a 120-day opportunity to purchase such interest, as explained in detail by the Partnership Agreement.

11. <u>Additional Limited Partners</u>. The General Partner may admit additional limited partners according to the agreement.

12. <u>Priority Among Limited Partners</u>. There is no priority of one Limited Partner over another as to the contributions or compensation by way of income.

13. <u>Continuance of Business</u>. Upon the death, retirement or insanity of the surviving General Partner, the Partnership shall dissolve unless continued by the remaining Partners by selecting a new General Partner. If the last surviving or serving General Partner has died, retired and/or becomes insane, then the Limited Partners holding interest in capital in excess of eighty nine percent (89%) of the capital owned by all Limited Partners may elect to continue the Partnership by selecting a new General Partner.

14. <u>Property Other Than Cash</u>. A Limited Partner cannot demand property other than a valid check in return for his contributions.

15. <u>Amount of Cash and Agreed Value and Description of Other Property Contributed</u>. The Partners in the Limited Partnership have contributed their interest as set forth (only the following start up contributions were made):
    JONATHAN J. MIODUSZEWSKI ..............time and expertise valued equivalent with the total cash contributions.
    Blue Sky Investments ....................................$20,000

GENERAL PARTNERS:

JONATHAN J. MIODUSZEWSKI, by our mark and seal

LIMITED PARTNERS:

Blue Sky Investments, by our mark and seal

© The Way of Kings™, 2001, 2008

# EXHIBIT E

# *Lease Agreement*

Business and Commercial

This Lease Agreement is made on February 2012

**BETWEEN SUNKIN PROPERTIES LLC**

with offices at: 4 Dover Road, Pittsford, N.Ywith offices at: 4 Dover Road, Pittsford, N.Y.14534

referred to as the "Landlord,"

**NEXT CLEANERS OF CRANFORD LTD.**

whose address will become: 11 Walnut Street, Cranford Township Ns will become: 11 Walnut Street, Cranford Township New Jersey (07016)

referred to as the "Tenant."

**1. Premises**. The Landlord does hereby lease to the Tenant and the Tenant does hereby rent from the Landlord, es hereby lease to the Tenant and the Tenant does hereby rent from the Landlord, the following described premises: Storefront and basement at 11 Walnut Avenue, Cranford, N.J., (the "Premises".)

**2. Term**. This Lease is for a term of three years commencing on March 1, 2012, and ending on April 1, 2015, with (3) six-year options to extend as hereinafter provided.

**3. Use**. The Tenants primary business will be a retail dry cleaner, however, all cleaning processes will not be performed on site at the leasehold; and tenant will not allow others to occupy or use the Premises or any part thereof for any purposes other than as specified in this Paragraph 3, s Paragraph 3, nor for any purpose deemed unlawful, disreputable, or extra hazardous, on account of fire or other casualty.

**4. Rent.** The Tenant agrees to pay an annual rent of $16,800.00 for the first year of lease to be paid as follows:

March 1, 2012- April 1, 2015: $1,400.00 per month; $16,800.00 per annum.

The first payment of rent is due upon the signing of this Lease by the Tenant. The Tenant must pay a late charge of $250.00 as additional rent for each payment that is more than 10 days late. This late charge is due with the monthly rent payment. The landlord shall have the right to terminate this lease upon the third time that the tenant is late with the monthly rent payment. The Tenant must also pay a fee of $100.00 as additional rent for any dishonored

check. The above rent schedule includes yearly increases of 3% or cost of living index for New Jersey, whichever is greater.

**5. Repairs and Care.** The Tenant has examined the Premises and has entered into this Lease without any representation on the part of the Landlord as to the condition thereof. The Tenant accepts same in as is  condition and will take good care of the Premises and will, at the Tenant's own cost and expense, make all repairs, including painting, decorating, and will maintain the Premises in good condition and state of repair, including all heating and air conditioning systems and at the end or other expiration of the term hereof, will deliver up the Premises in good order and condition, wear and tear from a reasonable use thereof, and damage by the elements not resulting from the neglect or fault of the Tenant, excepted. The Tenant will neither encumber nor obstruct the sidewalks, driveways, yards, entrances, hallways and stairs, but will keep and maintain the same in a clean condition, free from debris, trash, refuse, snow and ice. Notwithstanding anything stated to the contrary herein, upon the expiration of this lease, or upon an earlier termination, the tenant is obligated to restore the leasehold to its original condition less reasonable wear and tear.

**6. Alterations and Improvements**. No alterations, additions or improvements may be made, and no climate regulating, air conditioning, cooling, heating or sprinkler systems, television or radio antennas, heavy equipment, apparatus and fixtures, may be installed in or attached to the Premises, without the written consent of the Landlord. Unless otherwise provided herein, all such alterations, etc., when made, installed in or attached to the Premises, will belong to and become the property of the Landlord and will be surrendered with the Premises and as part thereof upon the expiration or sooner termination of this Lease, without hindrance, molestation or injury.

**7. Signs**. The Tenant may not place nor allow to be placed any signs upon, in or about the Premises, except as may be consented to by the Landlord in writing. The Landlord or the Landlord's agents, employees or representatives may remove any such signs in order to paint or make any repairs, alterations or improvements in or upon the Premises or any part thereof, but such signs will be replaced at the Landlord's

expense when such repairs, alterations or  improvements are completed. Any signs permitted by the Landlord will at all times conform with all municipal ordinances or other laws and regulations applicable thereto.

**8. Utilities**. The Tenant will pay when due all rents or charges for water or other utilities used by the Tenant, which are or may be assessed or imposed upon the Premises or charged to the Landlord

by the suppliers thereof during the term hereof, and if not paid, such rents or charges will be added to and become payable as additional rent with the installment of rent next due or within 30 days of demand therefor, whichever occurs sooner.

**9. Compliance with Laws etc.** The Tenant will promptly comply with all laws, ordinances, rules, regulations, requirements and directives of all Governmental or Public Authorities and

of all their subdivisions, applicable to and affecting the Premises, or the use and occupancy of the Premises, and will promptly comply with all orders, regulations, requirements and directives of the Board of Fire Underwriters or similar authority and of any insurance companies which have issued or are about to issue policies of insurance covering the Premises and its contents, for the prevention of fire or other casualty, damage or injury, at the Tenant's own cost and expense.

**10. Assignment.** The Tenant will not, without the written consent of the Landlord, assign, mortgage or hypothecate this Lease, nor sublet or sublease the Premises or any part thereof. In connection with any assignment or sublease, the Tenant will pay the Landlord, as additional rent, the Landlord's out-of-pocket expenses, up to a maximum of $2,500.00. per assignment or sublease, in connection with each such assignment or sublease. Any assignment or subletting will be on such terms and conditions as the Landlord may require as a condition of the Landlord's consent. The restrictions on assignment and subletting will also apply to: (a) any assignment or subletting that occurs by operation of law (including by reason of the death of the Tenant, if the Tenant is an individual, or, if the Tenant is an entity, by merger, consolidation, reorganization, transfer or other change in or of the Tenant's structure); (b) any assignment or subletting to or by a receiver or trustee in any federal or state bankruptcy, insolvency or other proceedings; ( c) the sale, assignment or transfer of all or substantially all of the assets of the Tenant outside of the ordinary course of the Tenant's business, with or without specific assignment of this Lease; or (d) if the Tenant is an entity, the direct or indirect sale, redemption or other transfer of fifty percent (50%) or more of the voting equity interests in the Tenant or the acquisition of a fifty percent (50%) or more voting equity interest in the Tenant.

**11. Liability Insurance.** The Tenant, at Tenant's own cost and expense, will obtain or provide and keep in full force for the benefit of the Landlord, during the term hereof, general public liability insurance, insuring the Landlord against any and all liability or claims of liability arising out of, occasioned by or resulting from any accident or otherwise in or about the Premises for injuries to any persons, for limits of not less than $ 100,000.00 for property damage, $1,000,000.00 for injuries to one person and $1,000,000.00 for injuries to more than one person, in anyone accident or occurrence. The insurance policies will be with companies authorized to do business in this State and will be delivered to the Landlord, together with proof of payment, not less than fifteen (15) days prior to the commencement of the term hereof or of the date when the Tenant enters in possession, whichever occurs sooner. At least fifteen days prior to the expiration or termination date of any policy, the Tenant will deliver a renewal or replacement policy with proof of the payment of the premium therefor. **Tenant shall name Sunkin Properties LLC as an additional insured on all policies of insurance, and shall provide proof that coverage is and shall remain in full force and effect throughout the term of the lease.**

**12. Indemnification.** The Tenant will hold harmless and indemnify the Landlord from and for any and all payments, expenses, costs, reasonable attorney fees (including attorney fees incurred in enforcing the Tenant's obligations under this Paragraph 12) and from and for any and all claims and liability for losses or

damage to property or injuries to persons occasioned wholly or in part by or resulting from any acts or omissions by the Tenant or the Tenant's agents, employees, guests, licensees, invitees, subtenants, assignees or successors, or for any cause or reason whatsoever arising out of or by reason of the occupancy of the Premises by the Tenant or business of the Tenant.

**13. Mortgage Priority.** This Lease will not be a lien against the Premises with respect to any mortgages that are currently or may hereafter be placed upon the Premises. Such mortgages will have preference and be superior and prior in lien to this Lease, irrespective of the date of recording of such mortgages. The Tenant will execute any instruments, without cost, which may be deemed necessary to further effect the subordination of this Lease to any such mortgages. A refusal by the Tenant to execute such instruments is a default under this Lease.

**14. Condemnation; Eminent Domain.** If any portion of the premises of which the Premises are a part is taken under eminent domain or condemnation proceedings, or if suit or other action shall be instituted for the taking or condemnation thereof, or if in lieu of any formal condemnation proceedings or actions, the Landlord grants an option to purchase and or sells and conveys the Premises or any portion thereof, to the governmental or other public authority, agency, body or public utility seeking to take the Premises or any portion thereof, then this Lease, at the option of the Landlord, will terminate, and the term hereof will end as of such date as the Landlord fixes by notice in writing. The Tenant will have no claim or right to claim or be entitled to any portion of any amount which may be awarded as damages or paid as the result of such condemnation proceedings or paid as the purchase price for such option, sale or conveyance in lieu of formal condemnation proceedings. The Tenant may, however, file a claim for any taking of fixtures and improvements owned by the Tenant, and for moving expenses. Except as provided in the preceding sentence, all rights of the Tenant to damages, if any, are hereby assigned to the Landlord. The Tenant will execute and deliver any instruments, at the expense of the Landlord, as may be deemed necessary to expedite any condemnation proceedings or to effectuate a proper transfer of title to such governmental or other public authority, agency, body or public utility seeking to take or acquire the Premises or any portion thereof. The Tenant will vacate the Premises, remove all of the Tenant's personal property therefrom and deliver up peaceable possession thereof to the Landlord or to such other party designated by the Landlord. The Tenant will repay the Landlord for such costs, expenses, damages and losses as the Landlord may incur by reason of the Tenant's breach hereof.

**15. Fire and Other Casualty.** If there is a fire or other casualty, the Tenant will give immediate notice to the Landlord. If the Premises are partially damaged by fire, the elements or other casualty, the Landlord will repair the same as speedily as practicable, but the Tenant's obligation to pay the rent hereunder will not cease. If, in the opinion of the Landlord, the Premises are so substantially damaged as to render them untenantable, then the rent will cease until such time as the Premises are made tenantable by the Landlord. If, however, in the opinion of the Landlord, the Premises are so substantially damaged that the Landlord decides not to rebuild, then the rent will be paid up to the time of such destruction

and this Lease will terminate as of the date of such destruction. The rent, and any additional rent, will be apportioned as of the termination date, and any rent paid for any period beyond that date will be repaid to the Tenant. However, the preceding provisions of this Paragraph 15 will not become effective or be applicable if the fire or other casualty and damage are the result of the carelessness, negligence or improper conduct of the Tenant or the Tenant's agents, employees, guests, licensees, invitees, subtenants, assignees or successors. In such case, the Tenant's liability for the payment of the rent and the performance of all the covenants, conditions and terms hereof on the Tenant's part to be performed will continue and suffered by the Landlord. If the Tenant is insured against any of the risks herein covered, then the proceeds of such insurance will be paid over to the Landlord to the extent of the Landlord's costs and expenses to make the repairs hereunder, and such insurance carriers will have no recourse against the Landlord for reimbursement.

**16. Reimbursement of Landlord.** If the Tenant fails or refuses to comply with any of the terms and conditions of this Lease, the Landlord may carry out and perform such conditions at the cost and expense of the Tenant, which amounts will be payable on demand to the Landlord. This remedy will be in addition to such other remedies as the Landlord may have by reason of the breach by the Tenant of any of the terms and conditions of this Lease.

**17. Increase of Insurance Rates.** If for any reason it is impossible to obtain fire and other hazard insurance on the buildings and improvements on the Premises in an amount and in the form and from insurance companies acceptable to the Landlord, the Landlord may, at any time, terminate this Lease, upon giving to the Tenant fifteen (15) days' notice in writing of the Landlord's intention to do so. Upon the giving of such notice, this Lease will terminate as of the date specified in such notice. If by reason of the use to which the Premises are put by the Tenant or character of or the manner in which the Tenant's business is carried on, the insurance rates for fire and other hazards increase, the Tenant will, upon demand, pay to the Landlord, as additional rent, the amounts by which the premiums for such insurance are increased.

**18. Inspection and Repair.** The Landlord and the Landlord's agents, employees or other representatives, will have the right to enter into and upon the Premises or any part thereof, at all reasonable hours, on reasonable prior notice, absent exigent conditions for the purpose of examining the Premises or making such repairs or alterations therein as may be necessary for the safety and preservation thereof. This clause will not be deemed to be a covenant by the Landlord nor be construed to create an obligation on the part of the Landlord to make such inspection or repairs.

**19. Right to Exhibit.** The Tenant will permit the Landlord and the Landlord's agents, employees or other representatives to show the Premises to persons wishing to rent or purchase the Premises, and Tenant agrees that on and after 60 days next preceding the expiration of the term hereof, the Landlord or the Landlord's agents, employees or other representatives will have the right to place notices on the front of the Premises or any part thereof, offering the Premises for rent or for sale; and the Tenant will permit the same to remain thereon without hindrance or molestation. The Tenant will also permit the Landlord and the Landlord's agents, employees or other representatives to show the Premises to

prospective mortgagees of the Premises or the land and improvements of which the Premises are a part.

**20. Removal of Tenant's Property.** Any equipment, fixtures, goods or other property of the Tenant that are not removed by the Tenant upon the termination of this Lease, or upon any quitting, vacating or abandonment of the Premises by the Tenant, or upon the Tenant's eviction, will be considered as abandoned and the Landlord will have the right, without any notice to the Tenant, to sell or otherwise dispose of the same, at the expense of the Tenant, and will not be accountable to the Tenant for any part of the proceeds of such sale, if any.

**21. Events** of Default; **Remedies Upon Tenant's Default.** The following are "Events of Default" under this Lease: (a) a default by the Tenant in the payment of rent, or any additional rent when due or within 30 days thereafter; (b) a default by the Tenant in the performance of any of the other covenants or conditions of this Lease, which the Tenant does not cure within 5 days after the Landlord gives the Tenant written notice of such default; (c) the death of the Tenant (if the Tenant is an individual); (d) the liquidation or dissolution of the Tenant (if the Tenant is an entity); (e) the filing by the Tenant of a bankruptcy, insolvency or receivership proceeding; (f) the filing of a bankruptcy, insolvency or receivership proceeding against the Tenant which is not dismissed within 45 days after the filing thereof; (g) the appointment of, or the consent by the Tenant to the appointment of, a custodian, receiver, trustee, or liquidator of all or a substantial part of the Tenant's assets; (h) the making by the Tenant of an assignment for the benefit of creditors or an agreement of composition; (i) if the Premises are or become abandoned, deserted, vacated or vacant; G) the eviction of the Tenant; or (k) if this Lease, the Premises or the Tenant's interest in the Premises passes to another by virtue of any court proceedings, writ of execution, levy, or judicial or foreclosure sale. If an Event of Default occurs, the Landlord, in addition to any other remedies contained in this Lease or as may be permitted by law, may either by force or otherwise, without being liable for prosecution therefor, or for damages, re-enter, possess and enjoy the Premises. The Landlord may then re-let the Premises and receive the rents therefor and apply the same, first to the payment of such expenses, reasonable attorney fees and costs, as the Landlord may have incurred in re-entering and repossessing the Premises and in making such repairs and alterations as may be necessary; and second to the payment of the rents due hereunder. The Tenant will remain liable for such rents as may be in arrears and also the rents as may accrue subsequent to the re-entry by the Landlord, to the extent of the difference between the rents reserved hereunder and the rents, if any, received by the Landlord during the remainder of the unexpired term hereof, after deducting the aforementioned expenses, fees and costs; the same to be paid as such deficiencies arise and are ascertained each month.

**22. Termination on Default.** If an Event of Default occurs, the Landlord may, at any time thereafter, terminate this Lease and the term hereof, upon giving to the Tenant five (5) days' notice in writing of the Landlord's intention so to do. Upon the giving of such notice, this Lease and the term hereof will end on the date fixed in such notice as if such date was the date originally fixed in this Lease for the expiration hereof; and the Landlord will have the

right to remove all persons, goods, fixtures and chattels from the Premises, by force or otherwise, without liability for damage.

**23. Non-Liability of Landlord.** The Landlord will not be liable for any damage or injury which may be sustained by the Tenant or any other person, as a consequence of the failure, breakage, leakage or obstruction of the water, plumbing, steam, sewer, waste or soil pipes, roof, drains, leaders, gutters, valleys, downspouts or the like or of the electrical, gas, power conveyor, refrigeration, sprinkler, air-conditioning or heating systems, elevators or hoisting equipment; or by reason of the elements; or resulting from the carelessness, negligence or improper conduct on the part of any other tenant or of the Landlord or the Landlord's or the Tenant's or any other tenant's agents, employees, guests, licensees, invitees, subtenants, assignees or successors; or attributable to any interference with, interruption of, or failure beyond the control of the Landlord, of any services to be furnished or supplied by the Landlord. This limitation on the Landlord's liability will not apply to damage or injury resulting from the gross negligence or willful misconduct of the Landlord or of the Landlord's agents, employees, guests, licensees, invitees, assignees or successors.

**24. Non-Waiver by Landlord.** The various rights, remedies, options and elections of the Landlord under this Lease are cumulative. The failure of the Landlord to enforce strict performance by the Tenant of the conditions and covenants of this Lease or to exercise any election or option, or to resort or have recourse to any remedy conferred in this Lease or the acceptance by the Landlord of any installment of rent after any breach by the Tenant, in anyone or more instances, will not be construed or deemed to be a waiver or a relinquishment for the future by the Landlord of any such conditions and covenants, options, elections or remedies, but the same will continue in full force and effect.

**25. Non-Performance by Landlord**. This Lease and the obligation of the Tenant to pay the rent hereunder and to comply with the covenants and conditions hereof, will not be affected, curtailed, impaired or excused because of the Landlord's inability to supply any service or material called for in this Lease, by reason of any rule, order, regulation or preemption by any governmental entity, authority, department, agency or subdivision or for any delay which may arise by reason of negotiations for the adjustment of any fire or other casualty loss or because of strikes or other labor trouble or for any cause beyond the control of the Landlord.

**26. Validity of Lease**. The terms, conditions, covenants and provisions of this Lease will be deemed to be severable. If any clause or provision contained in this Lease is adjudged to be invalid or unenforceable by a court of competent jurisdiction or by operation of any applicable law, it will not affect the validity of any other clause or provision in this Lease, but such other clauses or provisions will remain in full force and effect.

**27. Notices.** All notices required under the terms of this Lease will be given and will be complete by mailing such notices by certified or registered mail, return receipt requested, or by hand delivery, fax or overnight delivery service, to the address of the parties as shown at the beginning of this Lease, or to such other address as may be designated in writing, which notice of change of address is given in the same manner.

**28. Title and Quiet Enjoyment**. The Landlord covenants and represents that the Landlord is the owner of the Premises and has the right and authority to enter into, execute and deliver this Lease; and does further covenant that the Tenant on paying the rent and performing the conditions and covenants contained in this Lease, will and may peaceably and quietly have, hold and enjoy the Premises for the term of this Lease.

**29. Private Well Testing Act** (N.J.S.A. **58:12A-26 et seq.**) In accordance with the Private Well Testing Act (the "Act"), if potable water for the [Demised Premises] is supplied by a private well, and testing of the water supply is not required pursuant to any other State law, Landlord is required to test the water (i) by March 14, 2004, and (ii) every five years thereafter, in the manner established under the Act and to provide a copy of the results thereof to each tenant. If such testing has been done prior to the date hereof, upon signing this Lease, Landlord shall provide Tenant with a written copy of the most recent test results.

30. Entire Contract. This Lease contains the entire contract between the parties. No representative, agent or employee of the Landlord has been authorized to make any representations or promises with reference to the leasing of the Premises, or to vary, alter or modify the terms hereof. No additions, changes or modifications, renewals or extensions hereof, will be binding unless reduced to writing and signed by the Landlord and the Tenant.

**31. Tax Increase.** If in any calendar year during the term and of any renewal or extension of the term hereof, the annual municipal taxes assessed against the land and improvements leased hereunder or of which the Premises are a part, are greater than the municipal taxes assessed against such lands and improvements for the calendar year 2011, which is hereby designated as the base year, then, in addition to the rent fixed in this Lease, the Tenant will pay a sum equal to (10%) percent of the amount by which such tax exceeds the annual tax for the base year, inclusive of any increase during any such calendar year. Such sum will be considered as additional rent and will be paid in as many equal installments as there are months remaining in the calendar year in which such taxes exceed the taxes for the base year, on the first day of each month in advance, during the remaining months of that year. If the term hereof commences after the first day of January or terminates prior to the last day of December in any year, then such additional rent resulting from a tax increase will be proportionately adjusted for the fraction of the calendar year involved.

**32. Liens.** If any construction or other liens are created or filed against the Premises by reason of labor performed or materials furnished for the Tenant in the erection, construction, completion, alteration, repair or addition to any building or improvement, the Tenant will, upon demand, at the Tenant's own cost and expense, cause such lien or liens to be satisfied and discharged of record together with any lien claims that may have been filed. Failure to do so, will entitle the Landlord to resort to such remedies as are provided in this Lease for any default of this Lease, in addition to such as are permitted by law.

**33. Waiver of Subrogation Rights**. The Tenant waives all rights of recovery against the Landlord or the Landlord's agents, employees or other representatives for any loss, damages or injury of any nature whatsoever to property or persons for which the Tenant is insured.

The Tenant will obtain from Tenant's insurance carriers and will deliver to the Landlord, waivers of the subrogation rights under the respective policies.

**34. Security.** The Tenant has heretofore deposited with the Landlord the sum of $4,200.00 (the "Security Deposit") as security for the payment of the rent hereunder and the full and faithful performance by the Tenant of the covenants and conditions on the part of the Tenant to be performed. Such Security Deposit will be returned in installments to the Tenant, without interest, one installment with the sum of $1,400 credit to be paid after twelve (12) consecutive on time rental payments and another installment of $1,400 at the expiration of the term hereof, provided that the Tenant has fully and faithfully performed all such covenants and conditions and has surrendered the premises on time, in broom clean condition and is not in arrears in rent. During the term hereof, the Landlord may, if the Landlord so elects, have recourse to such Security Deposit, to make good any default by the Tenant, and the Tenant will, on demand, promptly restore the Security Deposit to its original amount. The Landlord will assign or transfer the Security Deposit, for the benefit of the Tenant, to any subsequent owner or holder of the reversion or title to the Premises, and the assignee will become liable for the repayment thereof as provided in this Lease, and the assignor will be released by the Tenant from all liability to return such Security Deposit. This provision will be applicable to every change in title and does not permit the Landlord to retain the Security Deposit after termination of the Landlord's ownership. The Tenant will not mortgage, encumber or assign the Security Deposit without the written consent of the Landlord.

**35. Estoppel Certificates.** The Tenant will at any time and from time to time upon not less than 10 days prior notice by the Landlord, execute, acknowledge and deliver to the Landlord or any other party specified

by the Landlord, a statement in writing certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that this Lease is in full force and effect as modified and stating the modifications) and the dates to which the rent, additional rent and other charges have been paid, and stating whether or not, to the knowledge of the signer of such certificate, the Tenant or the Landlord is in default in performance of any covenant, agreement or condition contained in this Lease, and, if so, specifying each such default of which the signer may have knowledge, as well as certifying to such other matters as the Landlord or the intended recipient of such certificate may reasonably request.

**36. Conformation with Laws and Regulations.** The Landlord may pursue the relief or remedy sought in any invalid clause, by conforming such clause with the provisions of the statutes or the regulations of any governmental agency as if the particular provisions of the applicable statutes or regulations were set forth at length in this Lease.

**37. Number and Gender.** In all references in this Lease to any parties, persons or entities, the us e of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of this Lease may require. All the terms, covenants and conditions contained in this Lease will be for and will inure to the benefit of and will

bind the respective parties hereto, and their heirs, executors, administrators, personal or legal representatives, successors and assigns.

**38. Miscellaneous:** Notwithstanding anything stated to the contrary the tenant shall be afforded two months abatement for the two months rent provided that the Tenant has deposited the security and has submitted proof of insurance as required by the lease. Notwithstanding anything stated to the contrary, after the initial six months for the lease term and provided the tenant is in good standing , if the tenant installs, at its own cost and expense a new flooring in or to the leasehold, they shall be afforded half of the flooring reimbursement sum of $3,000.00 credit.

**39. Option:** Provided that Tenant is in good standing and is not in default of any of the provisions of the lease, said tenant shall have an option to extend this lease for an additional three (6) year terms. During such extension the rent shall annually increase by not greater than three (3%) percent or the cost of living expense measured index, whichever is less, over or in addition to the prior years rent. Upon exercising of said option tenant shall be afforded the second half of the flooring reimbursement to the sum of $1,5000.00 credit.

**In Witness Whereof,** the parties have signed this Lease, or caused these presents to be signed by their proper officers or other representatives, the day and year first above written.

Witnessed or Attested by:

**Sunkin Properties, LLC , Landlord By:**

_____

**NEXT CLEANERS OF**

**CRANFORD, LTD.**

**By:**

State of }

ss.:

County of }

On , before me, the undersigned, personally appeared personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their capacities and that by their signatures on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument.

Notary

State of }

ss.:

County of }

On , before me, the undersigned, personally appeared personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their capacities and that by their signatures on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument.

Notary

# EXHIBIT F

# An amendment to the Lease Agreement

Business and Commercial

**BETWEEN SUNKIN PROPERTIES LLC**

with offices at: 4 Dover Road, Pittsford, N.Y.14534

referred to as the "Landlord,"

**NEXT CLEANERS OF CRANFORD LTD.**

whose address is: 11 Walnut Street, Cranford, N.J. 07016

referred to as the "Tenant."

Dated: March 2nd 2012

This agreement shall amend only what is specified within the contents of this agreement. All other terms and conditions as set forth in the original agreement are still in full force and effect if not amended within this agreement. This agreement shall consist of the following terms and conditions;

Landlord shall return 1 of 3 security deposits to Tenant. Landlord will hold 2 months security deposit during the duration of the agreement.

There shall be no increases for the first two years of the term. An annual increase of 5% shall commence starting the beginning of year 3 thereafter.

At the exercising of the first option Landlord agrees to reimburse Tenant 1 month of rent during each calendar year of option years 2, 4 and 6.

All other agreements and covenants outlined in the original Lease Agreement shall remain in full force and effect unless specified within this Amended Lease Agreement.

**LANDLORD:**
**SUNKIN PROPERTIES, LLC.**

Tom Sunkin
Managing Member

**TENANT:**
**NextCleaners Of Cranford LTD.**

JONATHAN JAMES MIODUSZEWSKI
General Partner

**Valley National Bank**

## <u>EXHIBIT G</u>

February 24, 2017

To Whom It May Concern:

    Jonathan Mioduszewski is the sole signer on the checking account at Valley National Bank. He has been the sole signer on the account since the account opening of August 2010 till present for Next Cleaners Com of Westfield.

Thank you.

Caitlin Larsen
Branch Service Manager
Cranford Branch


Printed on
Recycled Paper

A web.com Company

# EXHIBIT H

Cart (0)   Log In    24/7 Support 1.866.455

Manage Account 

All Products    Domains    Websites    Ecommerce    Hosting & SSL    Email    Online Marketing

## Whois Results

Great Partner Offers

Print-friendly version

Do another WHOIS lookup

```
Domain Name: NEXTCLEANERSNJ.COM
Registry Domain ID: 1855644738_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.godaddy.com
Update Date: 2016-04-22T10:27:48Z
Creation Date: 2014-04-21T23:53:57Z
Registrar Registration Expiration Date: 2017-04-21T23:53:57Z
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.4806242505
Domain Status: clientTransferProhibited http://www.icann.org/epp#clientTransferProhibited
Domain Status: clientUpdateProhibited http://www.icann.org/epp#clientUpdateProhibited
Domain Status: clientRenewProhibited http://www.icann.org/epp#clientRenewProhibited
Domain Status: clientDeleteProhibited http://www.icann.org/epp#clientDeleteProhibited
Registry Registrant ID: Not Available From Registry
Registrant Name: Jon Mioduszewski
Registrant Organization:
Registrant Street: 701 colonial ave
Registrant City: union
Registrant State/Province: New Jersey
Registrant Postal Code: 07083
Registrant Country: US
Registrant Phone: +1.9086887788
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: jonm701@hotmail.com
Registry Admin ID: Not Available From Registry
Admin Name: Jon Mioduszewski
Admin Organization:
Admin Street: 701 colonial ave
Admin City: union
Admin State/Province: New Jersey
Admin Postal Code: 07083
Admin Country: US
Admin Phone: +1.9086887788
Admin Phone Ext:
Admin Fax:
Admin Fax Ext:
Admin Email: dream_titan@hotmail.com
Registry Tech ID: Not Available From Registry
Tech Name: Jon Mioduszewski
Tech Organization:
Tech Street: 701 colonial ave
Tech City: union
Tech State/Province: New Jersey
Tech Postal Code: 07083
Tech Country: US
Tech Phone: +1.9086887788
Tech Phone Ext:
Tech Fax:
Tech Fax Ext:
Tech Email: dream_titan@hotmail.com
Name Server: NS1.MARKETINGPRESENCE.COM
Name Server: NS2.MARKETINGPRESENCE.COM
DNSSEC: unsigned
URL of the ICANN WHOIS Data Problem Reporting System: http://wdprs.internic.net/
>>> Last update of WHOIS database: 2017-02-24T21:00:00Z <<<
```

For more information on Whois status codes, please visit https://www.icann.org/resources/pages/epp-status-codes-2014-06-16-en

The data contained in GoDaddy.com, LLC's Whois database,
while believed by the company to be reliable, is provided "as is"
with no guarantee or warranties regarding its accuracy. This
information is provided for the sole purpose of assisting you
in obtaining information about domain name registration records.
Any use of this data for any other purpose is expressly forbidden without the prior written
permission of GoDaddy.com, LLC. By submitting an inquiry,
you agree to these terms of usage and limitations of warranty. In particular,
you agree not to use this data to allow, enable, or otherwise make possible,
dissemination or collection of this data, in part or in its entirety, for any
purpose, such as the transmission of unsolicited advertising and
and solicitations of any kind, including spam. You further agree
not to use this data to enable high volume, automated or robotic electronic
processes designed to collect or compile this data for any purpose,